UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1381 (KKx)** | Date | October 20, 2022 |
|---|---|---|---|
| Title | *Kenneth Johnson v. Prologis NA2 U.S., LLC, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. Nos. 9, 13) and (2) VACATING the October 24, 2022 Hearing (IN CHAMBERS)

Before the Court is a motion to remand filed by Plaintiff. ("Motion," Dkt. No. 13.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and VACATES the October 24, 2022 hearing.

## I.   BACKGROUND

On or about June 6, 2022, Plaintiff Kenneth Johnson ("Plaintiff" or "Mr. Johnson") filed a complaint against Defendants Prologis NA2 U.S, LLC ("Prologis"), Unilever Foods ("Unilever") and Crown Equipment Corporation ("Crown"), as well as Does 1-50 (collectively, "Defendants") in the Superior Court of the State of California for the County of San Bernardino. ("Notice of Removal," Dkt. No. 1; Notice of Removal Ex. A, "Complaint.")

On August 5, 2022, Crown filed a Notice of Removal. (Notice of Removal.) On August 11, 2022, Crown filed an Answer. (Dkt. No. 7.)

On September 1, 2022, Plaintiff attempted to file a motion to remand. (Dkt. No. 9.) The motion was flagged for filing deficiencies. (Dkt. No. 11.) This Court ordered that the motion be rejected pursuant to Local Rule 7-1.1. (Dkt. No. 12.) Plaintiff subsequently re-filed the Motion. (Motion.) In support of the Motion, Plaintiff also submitted a Declaration of Counsel and multiple exhibits. (Dkt. 13-1.)

On September 30, 2022, Crown opposed. ("Opposition," Dkt. No. 17.) In support of the Opposition, Crown also submitted an objection to Plaintiff's Declaration of Counsel. (Dkt. No. 18.) On October 4, 2022, Plaintiff replied. (Dkt. No. 19.) In support of the Reply, Plaintiff also submitted a Supplemental Declaration of Counsel and various exhibits. ("Supplemental Declaration of Demos P. Anagnos," Dkt. Nos. 13-1, 13-2.)

On October 5, 2022, the Court ordered supplemental briefing regarding the consent of Crown's co-defendants to removal. ("Supplemental Briefing Order," Dkt. No. 20.) On October 13, 2022, Crown timely filed a supplemental brief. ("Crown Supplemental," Dkt. No. 21.)

Plaintiff's Complaint alleges only state law causes of action against all Defendants. (See Complaint.) It asserts a total of eight claims for relief predicated on theories of negligence, premises liability, negligence per se, strict product liability, failure to warn, breach of implied warranty, and breach of warranty. (See id.)

The Complaint alleges that 305 Resource Drive, Bloomington, CA is the location of the October 3, 2021 incident giving rise to the lawsuit. (Id. ¶ 2.) According to the Complaint, Plaintiff is a resident of San Bernardino, California. (Id. ¶ 1.) Prologis is a Delaware corporation doing business in the state of California, with its "corporate address" located at 1800 Wazee St. #500, Denver, Colorado 80202. (Id. ¶ 3.) Unilever is an "unknown form of business entity" doing business in the state of California that owns the 305 Resource Drive property. (Id. ¶ 4.) The Complaint claims that Unilever's address is 305 Resource Drive, Bloomington, CA. (Id.) Crown is an Ohio corporation doing business in the State of California. (Id. ¶ 5.) Crown's address is 44 South Washington St., New Bremen, Ohio 45869. (Id.) The Complaint is silent as to the alleged conduct or locations of the fictious Doe defendants. (See id.)

The Statement of Damages attached to the Complaint seeks more than $4,000,000 in general and special damages. (See Notice of Removal, Ex. A.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D.

Cal. Oct. 31, 2014). The court must resolve doubts regarding removability in favor of remanding the case to state court. Id.

The district court may remand the case *sua sponte* or on the motion of a party. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). Such questions must be addressed at the outset of a case: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). Thus, the Court must ordinarily address any jurisdiction questions first, before reaching the merits of a motion or case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998).

"Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." Charlin v. Allstate Ins. Co., 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998). Further, a court "must resolve all material ambiguities in state law in plaintiff's favor" on a motion to remand. Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). "When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities." (Id. at 1118.)

### III.   DISCUSSION

The Court addresses in turn the two possible bases for remand asserted by Plaintiff: a lack of subject-matter jurisdiction and a lack of unanimous consent to removal.

**A.  Diversity Jurisdiction**

Federal district courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). If a federal court determines that it lacks subject-matter jurisdiction at any time during a dispute, the court must dismiss the action. Fed. R. Civ. P 12(h)(3); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it"). The party invoking jurisdiction must allege facts that establish the court's subject-matter jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

A defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. Complete diversity of citizenship is required, i.e., "the citizenship of each plaintiff [must be] different from that of each defendant." Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009).

Section 1332 provides that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has

its principal place of business…" 28 U.S.C. § 1332(c)(1).  A corporation's principal place of business refers to the corporation's "nerve center," the place where a corporation's officers direct, control, and coordinate the corporation's activities.  Hertz, 559 U.S. at 80-81.  In practice, this is normally where the corporation maintains its headquarters.  Id. at 93.

The amount in controversy is generally determined from the face of the complaint.  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938) ("[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . the suit will be dismissed."); see also Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347-48 (1977).  Dismissal of a complaint that alleges a figure above the jurisdictional minimum is only appropriate "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986).  "Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." Id. (citations omitted).

In his Motion, Plaintiff wastes considerable time arguing the nonexistence of federal question jurisdiction.  (See Motion at 7-8.)  It is undisputed that Crown did not remove on federal question jurisdiction, for clearly none exists on the face of the Complaint.  (Opposition at 4-5.)  Plaintiff also does not appear to dispute that he seeks in excess of $75,000.  (See Motion.)  The Statement of Damages attached to his Complaint indicates an excess of $4,000,000 sought.  (Notice of Removal, Ex. A.)  The only remaining question, therefore, is whether the parties are diverse.

Plaintiff's arguments concerning diversity jurisdiction are wholly misplaced.  It is obvious that he confuses the doctrines of *personal jurisdiction* with *subject-matter jurisdiction*.  (See Motion at 7-15.)  He argues, for example, "[i]n removing this case to federal court, Defendant Crown appears to assert a lack of sufficient minimum contacts with the State of California in order to support federal jurisdiction over this case."  (Motion at 9.)  The pages and pages of argument Plaintiff submitted regarding Defendants' California activities would have been useful to read in opposition to a motion to dismiss for lack of personal jurisdiction.  However, no such motion is presented, at least from Crown, which does not object to personal jurisdiction.  (See Opposition at 3.)

Plaintiff argues, "[w]hile defendants are incorporated in states other than California, each defendant has significant business contacts and ties to the state of California, which are governed by the laws of the state of California.  As a result, Plaintiff contends that there is no question that 'requisite diversity' did not exist in this case when Defendant Crown removed it." (Motion at

16.)[1]  Without realizing it, Plaintiff defeats his argument by conceding the only facts that matter: Defendants are not citizens of California, but he is.

For purposes of diversity jurisdiction, Plaintiff is a citizen of California.  (Complaint ¶ 1.)  Prologis is a Delaware corporation with its principal place of business in Colorado and is thus a citizen of those two states.  (Id. ¶ 3.)  Crown is an Ohio corporation with its principal place of business in Ohio.  (Id. ¶ 5.)  While the Complaint appears to allege that Unilever's address is the same 305 Resource Drive, Bloomington, CA locale that gives rise to the incident in question (id. ¶ 4), that is evidently not the address of the corporation's headquarters or principal place of business.  While there appears to be some confusion as to whether Unilever or Conopco is the proper defendant in this action, it does not matter for purposes of diversity jurisdiction.  On its own motion, the Court takes judicial notice of the fact that Unilever is a Delaware corporation (according to the Delaware Secretary of State website) and its corporate headquarters are located in New Jersey (according to its company website.)  See Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (information on government agency websites properly subject to judicial notice); Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (publicly available websites properly subject to judicial notice).  Conopco is a New York corporation (according to the New York Secretary of State website) and its corporate headquarters are also located in New Jersey (according to its company website).  Either way, neither defendant is a citizen of California.  The Doe defendants are irrelevant for purposes of diversity.  28 U.S.C. § 1441 (b)(1); Bryant v. Ford Motor Co., 886 F.2d 1526, 1527 (9th Cir. 1989) (noting that "Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction").

Accordingly, the Court finds that it has subject-matter jurisdiction over the action.

**B.  Consent of Co-Defendants**

Plaintiff raises for the first time in his Reply an argument that consent to removal may not have been unanimous.  Plaintiff asserts that Prologis "has taken no position on the motion to remand" and has thus "not consented to the removal."  (Reply at 3.)  Plaintiff also notes that the other co-defendant, Unilever, has yet to appear in the action, and thus also not indicated consent to removal.  (Id. at 4.)

A failure of unanimity is not considered to be a jurisdictional defect, and unless a party properly moves to remand based on the defect, the argument is waived and the action may

---

[1] Plaintiff also argues, "Defendants should not be permitted to simply remove a case to federal court against Plaintiff's will because they are incorporated in a state other than that which the original case was filed."  (Motion at 10.)  He states, "Defendants cannot remove a simple personal injury case to Federal Court based on the incorporation of Defendants in states other than California, otherwise every simple tort action involving an out of state corporation would be removed to federal court.  This is not the law of the land."  (Id. at 16.)  In presenting these arguments, Plaintiff ironically offers a fairly accurate statement of the "law of the land."

proceed in federal court. Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75 (1st Cir. 2009); Johnson v. Helmerich & Payne, Inc., 892 F.2d 422, 423 (5th Cir. 1990). The Court could find the argument waived. See United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (noting courts ordinarily decline to consider arguments raised for the first time in a reply brief); United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). However, the Court notes that Plaintiff appears to have become aware of the consent issue only after filing the Motion (see Reply at 3), excusing the timeliness of the argument. Additionally, the primary rationale behind the rule is that it is unfair to the opposing party, which would not have had an opportunity to address an argument raised for the first time in reply. Here, to give Crown an opportunity to respond, the Court issued an Order for supplemental briefing. (Supplemental Briefing Order.) In that Order, the Court stated, "Crown's brief must include supplemental documentation in the form of declarations and/or correspondence with counsel for Prologis and Unilever." (Id.) Crown timely responded. (Crown Supplemental.) The Court thus decides to consider the argument.

28 U.S.C. § 1446(b)(2)(A) requires that all defendants "must join or consent to the removal of the action." According to Plaintiff's counsel Demos P. Anagnos, counsel for Prologis "stated to Plaintiff's Counsel that when [c]ounsel for Prologis was contacted multiple times by [c]ounsel for Defendant Crown, [counsel for Prologis] told [c]ounsel for Crown that he was not participating in the removal of the matter, nor was he taking a position on removal." (Supplemental Declaration of Demos P. Anagnos ¶ 2.)

Crown's Supplemental somewhat clarifies the matter. At the outset, though, the Court notes that its Supplemental Briefing Order sought firsthand declarations or correspondence with counsel for the co-defendants, not a declaration from Crown purporting to relate its conversations with other parties. Nonetheless, Ryan Cosgrove, counsel for Crown, relates the following version of events: Initially, Casey Donoyan, counsel for Prologis, told Mr. Cosgrove that "Prologis would likely file a notice of consent to removal to the removal and he would confirm with Prologis." (Crown Supplemental at 2.) Subsequently, Mr. Donoyan began discussing potential dismissal of Prologis with Mr. Anagnos because "Prologis is not a proper defendant in the lawsuit." (Id.) Following Plaintiff's filing of the motion to remand, Mr. Donoyan told Mr. Cosgrove that Prologis wanted to "stay out of the fight" regarding remand because "Prologis was actively seeking a dismissal from Plaintiff since it is only the owner of the warehouse at which Plaintiff's accident occurred and it did not have any responsibility for the maintenance of the warehouse or subject forklift." (Id. at 2-3.) Mr. Donoyan did not want to interject Prologis into the remand fight while he worked to secure dismissal of Prologis. (Id. at 3.) After the court issued its Supplemental Briefing Order, Mr. Cosgrove spoke with Mr. Donoyan again and he stated "he would prefer to remain neutral while he works to secure Prologis' dismissal, but he has no issue with the matter remaining in federal court and is content with litigating the matter in the federal venue." (Id. at 3.) Mr. Donoyan also related that Plaintiff has agreed to dismiss Prologis from the action once Prologis "provides a few items regarding the lease agreement for the warehouse." (Id. at 3.) "As such, Prologis, which is not a proper defendant, will no longer be a defendant in this action shortly, but is content to litigate in Federal Court should it not be dismissed by Plaintiff." (Id.) Finally, Mr. Cosgrove spoke with Holly

Gagas, counsel for Conopco, Inc. ("Conopco"). (Id. at 3.) According to Ms. Gagas, Conopco, not Unilever, is a proper defendant in the action. (Id.) She said that Conopco is a New York corporation with its principal place of business in New Jersey. (Id.) She confirmed that Conopco consents to removal. (Id.) Ms. Gagas also said "she spoke to Plaintiff's counsel and reached an agreement that Conopco [] does not need to file a responsive pleading in this matter until after the motion to remand is resolved." (Id.)

Unlike other circuits, the Ninth Circuit allows one defendant to "vouch" for the consent of another defendant under certain circumstances. See Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009). The "filing of a notice of removal can be effective without individual consent documents on behalf of each defendant." Id. "One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient." Id. Proctor reasoned that two safeguards rendered the filing of individual consent documents unnecessary: first, an attorney is subject to sanctions under Federal Rule of Civil Procedure 11 for filing a false statement of unanimous consent, and second, other co-defendants would receive notice of the removal and have an opportunity to object to it. Id. Here, Crown's Notice of Removal states only that "Crown is informed and believes Prologis and Unilever consent to removal." (Notice of Removal ¶ 17.) It does not unequivocally state that counsel for Crown, before removing the action, actually spoke with counsel for the co-defendants to obtain their consent. As noted below, this matters because the Cosgrove Declaration does not indicate any further communications with Unilever.

The courts appear somewhat divided on whether *non-opposition* to removal constitutes "consent" to removal. For example, in Ruiz v. Border Transfer Servs., Inc., 215 F. Supp. 2d 861 (S.D. Tex. 2002), the court found a lack of unanimous consent where the non-petitioning defendant gave no "affirmative, explicit, official, or unambiguous" consent to removal. Id. at 862. There, the non-petitioning defendant stated to the petitioning defendant that it was neither opposing nor joining the removal, referred to the other defendant's removal as "your attempt," and discussed a proposed procedure in state court if the other defendant's attempt proved unsuccessful. Id. at 862. By contrast, in York Hannover Holding A.G. v. Am. Arb. Ass'n, 794 F. Supp. 118 (S.D.N.Y. 1992), the court found only a "semantic distinction" between the phrases "has no objection to" and "consented to" where the non-petitioning defendant evinced an "absolute determination to preserve total neutrality," positioning itself as a "Switzerland surrounded by warring entities." Id. at 121-22. Between these two views, the Court is persuaded that Prologis' position is likely more akin to the latter, in which it might appropriately be playing the role of "Switzerland," seeking neutrality in the remand fight while negotiating possible dismissal with Plaintiff.

However, that determination is dependent on whether the Cosgrove Declaration accurately relates Prologis' position. The Court has yet to receive any evidence directly from Prologis on the matter, whether in the form of a notice of consent or a declaration. And in certain respects, the Crown Supplemental is ambiguous as to what information comes from counsel for Prologis and what is a conclusion Mr. Cosgrove purports to derive from his conversation with counsel for Prologis. For instance, the Crown Supplemental states: "As such, Prologis, which is

not a proper defendant, will no longer be a defendant in this action shortly, but is content to litigate in Federal Court should it not be dismissed by Plaintiff." (Crown Supplemental at 3.) In other words, it does not state that counsel for Prologis *said* he would be "content to litigate" in federal court in the event that Prologis is not dismissed from the action; that appears to be an inference Crown has drawn from other statements. The Court observes that Prologis has yet to be dismissed, despite Mr. Cosgrove relating that "Plaintiff has agreed to dismiss Prologis from this action once Prologis provides a few items regarding the lease agreement for the warehouse." (Id. at 3.) In support of the Reply, however, Plaintiff attaches the lease agreement, and indicates he obtained it from counsel for Prologis on September 28, 2022. (Supplemental Declaration of Demos P. Anagnos ¶ 2.) Nowhere does Plaintiff indicate that he intends to agree to dismissal of Prologis, even though he is apparently in receipt of (at least some) of the documents related to the lease agreement.

The bigger consent issue is that the Court has yet to receive *any* evidence regarding Unilever's view on the matter. The Crown Supplemental indicates that Mr. Cosgrove spoke with counsel for Conopco, who in turn relates that Conopco appears to be a correct defendant in the matter, and Unilever is not a proper defendant. (Crown Supplemental at 3.) Though the Crown Supplemental again does not provide firsthand information from counsel for Conopco, the Court is likely persuaded that, should Conopco enter this action as a properly named defendant, it would consent to removal. For now, though, Conopco is not a defendant, and Unilever is. Plaintiff has submitted evidence that Unilever was properly served through substituted service for Alan Jope, CEO of Unilever. (Supplemental Declaration of Demos P. Anagnos ¶ 5; Reply Ex. H.) Unilever has not yet appeared in the action and has not filed a notice of consent to removal. Moreover, Crown has submitted *no evidence* that it has even attempted to communicate with counsel for Unilever or any individual employed by Unilever. To excuse this omission, the Court must rely on (1) hearsay relating a conversation with counsel for Conopco, who in turn avers (2) that Unilever is purportedly not a "proper defendant" in the action, but (3) does not state any basis for that view. Ultimately, the Court finds that Crown asks too much.

In the absence of such critical information, this case appears to be most like those in which courts were forced to determine the consent of co-defendants on a silent or ambiguous record. In such cases, the majority view (if not the unanimous view) is to find a lack of consent. Rejecting an argument that a non-removing defendant's failure to respond to two emails seeking consent to removal indicated the non-removing defendant "voiced no opposition" to removal, the court in Tilley v. Tisdale, 914 F. Supp. 2d 846 (E.D. Tex. 2012) ruled that "silence is not valid consent and does not satisfy the provisions of § 1446." Id. at 852. Other courts have remanded where nothing in the record, other than an unsupported notice of non-opposition to removal attached to a Notice of Removal, indicates that other defendants have consented. See Luckett v. Harris Hosp.-Fort Worth, 764 F. Supp. 436, 442 (N.D. Tex. 1991). In Alejandro v. Philadelphia Vision Ctr., 271 F. Supp. 3d 759 (E.D. Pa. 2017), the court considered whether two co-defendants' statements in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) that they "did not object" to removal constituted sufficient evidence of valid consent. Id. at 761. The court held, "[a]n expression of no objection to an act of another party does not mean consent to or joinder in what that other party is doing. It is at best an ambiguous signal that

cannot meet the requirement of an affirmative written consent to removal as required under § 1446(a) and as articulated in the case law." Id. Moreover, the Alejandro court refused to consider notices of consent to removal by those defendants filed *after* the motion to remand, ruling that they came more than thirty days after service of the complaint, in violation of 28 U.S.C. § 1446(b)(2)(B). Id. at 762.

These holdings are consistent with the rule across circuits, including the Ninth, of strict construction of the removal statute against federal jurisdiction. See, e.g., Gaus, 980 F.2d at 566. The Court is thus bound by competing directives. On the one hand, the Ninth Circuit requires this Court to hold the removing party to its burden and to reject jurisdiction "if there is any doubt as to the right of removal in the first instance." Id. On the other, the Ninth Circuit held in Proctor that ["[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record" may suffice to establish unanimous consent. 584 F.3d at 1225. The Court is aware of no authority, however, that would permit it to find Unilever has unambiguously consented to removal without *any* indication in the record of its view on the matter. This is true even if it accepts Crown's representation that Unilever soon may no longer be a defendant in the action. And even if Proctor would have permitted Crown to relate the conversation it had with counsel for Conopco in its Notice of Removal, it did not do so; that information was conveyed to the court on October 13, 2022, over two months after removal and therefore well after the usual 30-day deadline to lodge a notice of consent. While this case presents some unusual circumstances, the bottom line is that the Court has no evidence that one defendant (Unilever) consented to removal, secondhand information that a current party does not necessarily oppose removal (Prologis), and secondhand (and technically untimely) information that another defendant who is yet to become a party to the action (Conopco) does consent. Crown's position is effectively that all of this can likely be cured in due course, once parties are substituted. For now, though, Prologis and Unilever remain defendants; Conopco is not. On the record before it, the Court must conclude there was a lack of unanimous consent at the time of removal and that the deficiencies remain unresolved. The Court is thus bound to resolve these doubts as to the right of removal in favor of Plaintiff.

Accordingly, the Motion is GRANTED.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** the case to the Superior Court of California for the County of San Bernardino for all further proceedings. The hearing set for October 24, 2022 is VACATED. The Clerk is directed to close the case.

**IT IS SO ORDERED.**